Per Curiam:
In this appeal, the United States contends that the Indian Claims Commission erred as a matter of law in failing to hold that the doctrines of res judicata and/or *641 collateral estoppel effectively 'bar the appellee’s right to have the Commission redetermine the fair market value of certain Creek town lots. The appellee filed its claim with the Indian Claims Commission under the Act of August 13, 1946, seeking to revise the Creek Agreement of March 1, 1901 (31 Stat. 861), so as to recover the true value of certain Creek lots in the State of Oklahoma, which were sold to settlers: In its September 9, 1970 “Opinion on Motions to Determine Issues,” the Commission noted that the facts upon which appellee’s claim is founded were at issue in Creek Nation v. United States, 97 Ct. Cl. 602 (1942), cert. denied, 318 U.S. 787 (1943). In denying appellant’s pleas of res judicata and collateral estoppel, the Commission was of the opinion that our prior decision in this case was concerned with whether the evidence of higher true market value constituted proof that the appraisals must have been arrived at through fraud or gross error. With respect to the claim involved in this appeal, the Commission decided that it would be required to determine the true market value of the lots without regard to whether the evidence would establish fraud or gross error on the part of the appraisers.
We reverse. We think it is clear that .the Commission misinterpreted the prior decision of this court and that the doctrine of collateral estoppel bars appellee from relitigating the issue of the fair market value of the town lots.
Our decision of June 1, 1942, 97 Ct. Cl. 602, was based upon a special jurisdictional act which conferred jurisdiction on the court to
* * * hear, examine, and adjudicate and render judgment on any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Creek Indian Nation or Tribe, or arising under or growing out of any Act of Congress in relation to Indian affairs, which said Creek Nation or Tribe may have against the United States * * *. Id. at 603.
In describing the issues to be decided, the court’s opinion in that case stated:
The plaintiff sues the defendant for the difference between the sale price of its town lots, which were sold by a commission appointed by the Secretary of the Interior, *642 and what it alleges was the “true value” thereof. Id. at 607.
*****
It is alleged that these appraisals were arbitrary, fictitious, unreasonable, and made without any attempt to fix true values of the lots, and were far 'below the true values thereof. This, it is alleged, constituted a taking of plaintiff’s property by the defendant, for which it is-required by the Fifth Amendment of the Constitution to pay just compensation; or, if this be not true, it is alleged that the appraisals and their subsequent approval by the Secretary of the Interior were a violation of the Creek Agreement, for which the defendant is liable to respond to plaintiff for the loss suffered thereby. Id. at 608-609.
Thus, there is no doubt that the f ormer action and the claim now before us were brought for identical purposes, namely, to show that the lots were sold for less than their true value and to recover the difference between the sale prices and the “true” or “fair market” value of the lots.
In the previous Creek case, 97 Ct. Cl. 602, the court made the following findings of fact:
4. ***
The commissioners so appointed were qualified to discharge the duties for which they were appointed. Id. at 605.
*****
7. The lots in the town of Wagoner were appraised in 1901, and all the rest in 1902, except the town of Boynton, which was appraised in 1905. Prior to the time the appraisals were made no lots within the Creek Domain had ever been sold, and no market values had been established. The commissioners in making the appraisals visited each lot, noted its location and desirability, considered the 'condition of the country surrounding the town, the proximity of the town to railroads, and such other facts as might bear on the value of lots. In making the appraisals the commissioners exercised their best judgment of the value of each of the lots. In each instance the appraisals were unanimous, and in each instance the Indian Inspector and the Commissioner of Indian Affairs recommended that they be approved, and in each instance they were approved by the Secretary of the Interior.
*643 After the appraisals bad been made, deeds to the lote were executed by the Principal Chief of the Creek Nation. At the time these deeds were executed no one complained that the appraisals were too low. Id. at 606.
8 ***
Later, on October 19, 1906, the Creek Nation presented a memorial to Congress complaining of wrongful scheduling of the lots, but in this memorial no complaint was made that they had been appraised too low. * * * Id. at 606.
Q * * *
There is no proof in the record from which can be de-terminéd the true values of the lots at the time they were appraised other than the appraisals themselves. The proof does not show that the lots were not appraised at their true values. * * * Id. at 607.
In addition to the findings recited above, the court in that case also decided the issue as to whether the townsite commissioners had been guilty of fraud or gross negligence in surveying and appraising the lots. With respect to this issue, the court found as follows:
Under these circumstances, it would take proof of the strongest character to make us conclude that there was either fraud or gross error in these valuations. The proof offered by the plaintiff fails to convince us of either. Id. at 611.
In the light of these findings and on the basis of the legal principles which we discussed in Creek Nation v. United States, 168 Ct. Cl. 512 (1964), we must conclude that the appellee’s right to recover on the claim presented in this appeal is foreclosed by the doctrine of collateral estoppel.
The appellee attempts to avoid the effect of the findings of fact made by the court on the ground that when the earlier case was decided, we had no authority to determine a claim based on fair and honorable dealings or to consider an agreement as if revised on the ground of unconscionable consideration. In its decision of September 9, 1970, the Commission apparently ignored these contentions for the obvious reason that they have no relevance to the determination of market value which the Commission proposes to make. Section 10 of the Creek Agreement (31 Stat. 861), the pertinent section, merely provides for the appointment of a townsite eommis *644 sion to appraise and sell the lots for the benefit of the tribe. It further provides that an agreement of two members as to the true value of the lots shall constitute a determination thereof. The appellee has not suggested how an attempt to revise the agreement on the ground of “unconscionable consideration” would affect the finding that the proof in the prior case did not show that the lots were not appraised at their true value. Even if there were any conceivable reason for revising the Creek Agreement with respect to the lots, it would not aid the appellee. In its 1942 decision, this court found that the proof failed to show gross error in the valuation of the lots. Osage Nation v. United States, 119 Ct. Cl. 592, 97 F. Supp. 381 (1951), cert. denied, 342 U.S. 896.
Any evidence that appellee might present under the label of “lack of fair and honorable dealings” would be equally immaterial and unavailing. The only reason for the admission of such evidence would be to show that the lots were not sold at their true value. That fact has been finally and conclusively decided against the appellee in the prior suit.

Reversed.

[1]

 The “half price" issue, which was also considered In the Commission’s decision of September 9, 1970, Is not before us, and we intimate no decision on It.